AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED

JUN 2 3 2017

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY      DEPUTY

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Samsung galaxy cellular telephone, ESN #:<br>355300077007008, IMSI #: 310150700393025 | )<br>)<br>)<br>)<br>)<br>) |

Case No.

'17 MJ 2057

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the    **Southern**    District of    **California**    , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841, 846, 952, 960, 963 | Possession with intent to distribute controlled substance; Importation of a Controlled Substance; Conspiracy to commit same |

The application is based on these facts:

See attached Affidavit

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*David Owen*
*Applicant's signature*

Special Agent David Owen, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6/23/17

*Judge's signature*

City and state: San Diego, CA

Hon Barbara L. Major, U.S. Magistrate Judge
*Printed name and title*

1

**ATTACHMENT A**

2   Described as one Samsung galaxy cellular telephone, ESN#: 355300077007008,

3   IMSI#:        310150700393025,        taken        from        Adriana        Morfin-Paniagua

4   ("Paniagua")("**Subject Telephone**"). This telephone is currently in the possession of

5   HSI.  The front and back of the **Subject Telephone** is depicted below.

6

7

8

9

10

11      

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTACHMENT B**

The following evidence to be searched for and seized pertains to violations of Title 21, Untied States code, Sections 952, 960 – Importation of Controlled Substances; Title 21, United States Code, Section 841(a)(1) – Distribution of Controlled Substances, Title 21, United States Code, Section 846 – Conspiracy to Distribute Controlled Substances including evidence reflecting dominion and control of the device.

1.    Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:

a.    tending to indicate efforts to   acquire controlled substances and subsequrntly, transport or import controlled substances from Mexico to the United States;

b.    tending to identify other facilities, storage devices, or services-such as email addresses, IP addresses, phone numbers-that may contain electronic evidence tending to indicate efforts to acquire, transport or import controlled substances from Mexico to the United States;

c.    tending to identify co-conspirators, criminal associates,  or  others  who may be   involved in the acquisition, transportation or importation of controlled substances from Mexico to the United States;

d.    tending to identify travel to or presence at locations involved in the acquisition, transportation or importation of controlled substances from Mexico to the United States, such as stash houses, load houses, or delivery points;

e.    tending to identify the user of, or persons with control over or access to, the **Subject Telephone**; or

f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

# AFFIDAVIT IN SUPPORT OF
# APPLICATION FOR SEARCH WARRANT

I, David Owen, being duly sworn, hereby depose and state as follows:

## A.   INTRODUCTION

1.   This affidavit is in support of an application by the United States of America for a search warrant for to search the following electronic communication facility:

a.   Described as one Samsung galaxy cellular telephone, ESN #: 355300077007008, IMSI #: 310150700393025, taken from Adriana Morfin-Paniagua ("Paniagua")(**Subject Telephone**).

b.   The scope of the search will be limited to those items described in Attachment B – specifically evidence placed within the **Subject Telephone** or created by the **Subject Telephone** from February 28, 2017 to March 8, 2017.  This date range represents when Paniagua activated the **Subject Telephone** to the date of her instant arrest.

## B.   EXPERIENCE & TRAINING

2.   I am a federal "Law Enforcement Officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I am also a Special Agent ("SA") with Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), and have been employed by ICE/HSI since May of 2008.

3.   Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, pagers, portable radios and GPS devices to maintain communication and location information with co-conspirators in order to further their criminal activities. This is particularly true in cases involving distribution amount quantities of controlled

1  substances, such as methamphetamine.  Typically, load drivers smuggling controlled
2  substances across the border are in telephonic contact with co-conspirators immediately
3  prior to, during and following the crossing of the narcotic load, at which time they
4  receive instructions on how to cross and where and when to deliver the controlled
5  substance.

6      4.  In preparing this affidavit, I have conferred with other agents and law
7  enforcement personnel who are experienced in the area of narcotics investigations, and
8  the opinions stated below are shared by them.  Further, I have personal knowledge of
9  the following facts, or have had them related to me by persons mentioned in this
10 affidavit.

11     5.  Based upon my training and experience as a Special Agent, and
12 consultations with law enforcement officers experienced in narcotics smuggling
13 investigations, I am also aware that:

14     a.  Drug smugglers will use cellular telephones because they are mobile
15 and they have instant access to telephone calls, text, web, and voice messages;

16     b.  Drug smugglers will use cellular telephones because they are able
17 to actively monitor the progress of their illegal cargo while the conveyance is in transit;

18     c.  Drug smugglers and their accomplices will use cellular telephones
19 because they can easily arrange and/or determine what time their illegal cargo will
20 arrive at predetermined locations;

21     d.  Drug smugglers will use cellular telephones to direct drivers to
22 synchronize an exact drop off and/or pick up time of their illegal cargo;

23     e.  Drug smugglers will use cellular telephones to notify or warn their
24 accomplices of law enforcement activity to include the presence and posture of marked
25 and unmarked units, as well as the operational status of checkpoints and border
26 crossings; and

27

28

     f.    The use of cellular telephones by smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

6.    Because this affidavit is being submitted for the limited purpose of establishing probable cause to obtain a search warrant, it does not contain all of the information known to federal agents regarding this investigation.  Instead it contains only those facts believed to be necessary to establish probable cause.  In addition, information contained in this affidavit is based upon reviews of official reports and records, upon conversations with other Homeland Security Investigations Special Agents, and my personal observations and knowledge.  When the contents of documents or statements of others are reported herein, they are reported in substance and in part unless otherwise indicated. Date and times are approximate.

## C.    STATEMENT OF PROBABLE CAUSE

7.    On March 8, 2017, at approximately 9:00 a.m., defendant Paniagua, a United States citizen, applied for permission to enter into the United States from Mexico through the Otay Mesa ("OTM") Port of Entry ("POE") in San Diego, California. Paniagua was the driver, sole occupant, and registered owner of a 1999 Honda Accord bearing California license plates ("The Honda").

8.    During the secondary inspection of The Honda, officers discovered a non-factory piece of sheet metal on the undercarriage of The Honda running the length of the transmission tunnel. Concealed within this area, officers discovered thirty square shaped packages wrapped in plastic wrap.  Officers randomly probed one of the thirty packages and found that the package contained yellow tablets with the markings "OP" on one side and "40" on the other. The color of these tablets and the markings are consistent with 40 mg tablets of Oxycontin.  A DEA forensic analysis subsequently

1 | determined, however, that the aforementioned tablets contained Heroin (Schedule I)
2 | The weight of the thirty packages was approximately 12.61 kilograms (27.81 pounds).

3 |         a.     The street value of 40mg Oxycontin tablets is approximately $30.00
4 | to $40.00 dollars a tablet.[1]  The approximate value of 47,340 tablets of Oxycontin is (at
5 | $30.00 a tablet) $1,420,200.00 dollars. At the time of her arrest, Paniagua was in
6 | possession of two cellular telephones - an Apple i-Phone and the **Subject Telephone**.

7 |     9.     At approximately 1:10 p.m., HSI SA Prescilla Gonzales contacted and
8 | interviewed Paniagua. Paniagua waived her *Miranda* rights and agreed to speak with
9 | agents. Although Paniagua spoke English, the interview was conducted in Spanish and
10 | SA Gonzales utilized the interpretation services of a Spanish speaking agent.

11 |     10.     Paniagua admitted that she knowingly smuggled drugs from Mexico into
12 | the United States. Paniagua also admitted that she was aware that a non-factory
13 | compartment existed in the undercarriage of The Honda. At first, Paniagua told agents
14 | she was not aware she was transporting anything inside The Honda. Paniagua ultimately
15 | confessed to agents that she believed The Honda was loaded with drugs, possibly
16 | cocaine. Paniagua told agents she would be paid between $1,000.00-1,500.00 USD once
17 | she returned to Tijuana. Paniagua admitted she has crossed drugs into the United States
18 | on approximately four occasions.

19 |     11.     Paniagua was arrested and charged with a violation of Title 21, United
20 | States Code, 952 and 960, Importation of a Controlled Substance, and booked into the

---

[1] The instant drug-load was determined to consist of counterfeit Oxycontin tablets, each of which would normally have contained 40 mg of oxycodone (Schedule II). Oxycodone and heroin are both opioids and it is likely that these counterfeit tablets would have been sold to unwitting purchasers as genuine Oxycontin - instead of the heroin which they actually contained.  As such, the value of the instant drug load is stated in terms of what the counterfeit Oxycontin tablets would have been worth, even though the oxycodone was substituted with heroin.

Metropolitan Correctional Center. Paniagua is currently, charged in case #: 17-cr-00869-GPC.

12. Following Paniagua's arrest, the **Subject Telephone** has remained in the continuous custody of HSI. Specifically, the **Subject Telephone** was stored in an HSI evidence vault in San Ysidro, CA where it was secured with access limited to only government personnel. The **Subject Telephone** was sealed in plastic evidence packaging and this sealed package is intact with no signs of any tampering. The **Subject Telephone** has remained in essentially the same condition as it was when seized on March 8, 2017.

## D.   METHODOLOGY

### *Procedures for Electronically Stored Information*

13. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired.

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

Search Protocol_SLF_041813

1  For devices that are not subject to forensic data acquisition or that have potentially
2  relevant data stored that is not subject to such acquisition, the examiner must inspect
3  the device manually and record the process and the results using digital photography.
4  This process is time and labor intensive and may take weeks or longer.

5      14.   Following the issuance of this warrant, I will collect the **Subject**
6  **Telephone** and subject it to analysis. All forensic analysis of the data contained within
7  the **Subject Telephone** and its memory cards will employ search protocols directed
8  exclusively to the identification and extraction of data within the scope of this warrant.

9      15.   Based on the foregoing, identifying and extracting data subject to seizure
10 pursuant to this warrant may require a range of data analysis techniques, including
11 manual review, and, consequently, may take weeks or months. The personnel
12 conducting the identification and extraction of data will complete the analysis within
13 ninety (90) days, absent further application to this court.

14 **E.    ITEMS TO BE SEIZED**

15     The following evidence to be searched for and seized pertains to violations of
16 Title 21, Untied States code, Sections 952, 960 – Importation of Controlled Substances;
17 Title 21, United States Code, Section 841(a)(1) – Distribution of Controlled Substances,
18 Title 21, United States Code, Section 846 – Conspiracy to Distribute Controlled
19 Substances including evidence reflecting dominion and control of the device.

20     1.    Communications, records, or data including but not limited to emails, text
21 messages, photographs, audio files, videos, or location data:

22          a.    tending to indicate efforts to  acquire controlled substances and
23 subsequrntly, transport or import controlled substances from Mexico to the United
24 States;

25          b.    tending to identify other facilities, storage devices, or services–such
26 as email addresses, IP addresses, phone numbers-that may contain electronic evidence

27

28

1 tending to indicate efforts to acquire, transport or import controlled substances from
2 Mexico to the United States;

3          c.    tending to identify co-conspirators, criminal associates, or others
4 who may be involved in the acquisition, transportation or importation of controlled
5 substances from Mexico to the United States;

6          d.    tending to identify travel to or presence at locations involved in the
7 acquisition, transportation or importation of controlled substances from Mexico to the
8 United States, such as stash houses, load houses, or delivery points;

9          e.    tending to identify the user of, or persons with control over or access
10 to, the **Subject Telephone**; or

11          f.    tending to place in context, identify the creator or recipient of, or
12 establish the time of creation or receipt of communications, records, or data above.

13 **F.    CONCLUSION**

14     16.    Based on all of the facts and circumstances described above, I believe that
15 probable cause exists to conclude that Paniagua used the **Subject Telephone** to
16 facilitate the offenses of distribution (which includes the transportation and
17 importation) of drugs, and conspiracy to commit the same offenses, and that the
18 **Subject Telephone** was likely used to facilitate the offense by transmitting and/or
19 storing data, which constitutes evidence, fruits, and instrumentalities of violations of
20 Title 21, Untied States code, Sections 952, 960 – Importation of Controlled Substances;
21 Title 21, United States Code, Section 841(a)(1) – Distribution of Controlled
22 Substances, Title 21, United States Code, Section 846 – Conspiracy to Distribute
23 Controlled Substances.

24     17.    I also believe that probable cause exists to believe that evidence, fruits and
25 instrumentalities of illegal activity committed by Paniagua continue to exist on the
26 **Subject Telephone**. As described above, the **Subject Telephone** has remained in HSI
27 custody since Paniagua's March 8, 2017 arrest. Based upon my experience and

28

7

1   training, consultation with other agents in controlled substances, consultation with
2   other sources of information, and the facts set forth herein, I know that the items to be
3   seized set forth in Attachment B are likely to be found in the property to be searched
4   described in Attachment A.  Therefore, I respectfully request a warrant be issued
5   authorizing me, a another HSI agent, or another federal law enforcement agent specially
6   trained in digital evidence recovery, to search the items described in Attachment A, and
7   seize the items listed in Attachment B.

David Owen
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this _23_ day of June 2017.

HON. BARBARA L. MAJOR
U.S. MAGISTRATE JUDGE

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

8

Search Protocol_SLF_041813